UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-279-GWU


GLEN WALTERS,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB).  The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Walters

4.      Can the claimant's severe impairment(s) be expected to result
        in death or last for a continuous period of at least 12 months?
        If yes, proceed to Step 5.  If no, the claimant is not disabled.
        See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of
        impairments meeting or equaling in severity an impairment
        listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
        Impairments)?  If yes, the claimant is disabled.  If no, proceed
        to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a),
        416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity and the physical and mental
        demands of the work he has done in the past, still perform this
        kind of past relevant work?   If yes, the claimant was not
        disabled.  If no, proceed to Step 7.   See 20 C.F.R.
        404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity, age, education, and past work
        experience, do other work--i.e., any other substantial gainful
        activity which exists in the national economy?  If yes, the
        claimant is not disabled.   See 20 C.F.R. 404.1505(a),
        404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent
to the judicial review of administrative agency action apply.   Review of the
Commissioner's decision is limited in scope to determining whether the findings of
fact made are supported by substantial evidence.  Jones v. Secretary of Health and
Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial
evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Walters

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Walters

> pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

Walters

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Walters

physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Glen Walters, a 42-year-old man with an eighth-grade education and work experience as a truck washer and in coal mining, was found by an Administrative Law Judge (ALJ) to have "severe" impairments prior to his Date Last Insured (DLI) consisting of degenerative disc disease, a mood disorder, an anxiety disorder and borderline intellectual functioning.  (Tr. 17).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Walters retained the residual functional capacity to perform a significant number of "light" level jobs existing in the economy and, accordingly, was not entitled to benefits.  (Tr. 21-4).  The Appeals Council declined to review, and this action followed.

At the most recent administrative hearing, the ALJ had asked the VE whether a person with the plaintiff's "work history and educational background" could perform any jobs if he were limited to "light" level exertion, and also had the following nonexertional impairments.  (Tr. 338).  He: (1) could do no climbing or crawling; (2) could occasionally stoop, bend and, crouch; (3) needed to avoid humidity, hazards, and vibration; (4) had a "seriously limited but not precluded" ability to deal with the public, deal with stresses, and maintain personal appearance; and (5) had a "limited but satisfactory" ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention and concentration, handle

7

detailed instructions, behave in an emotionally stable manner, and respond appropriately to changes in the work setting.  (Tr. 338-9).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 339-40).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.  There are additional factors involved concerning the period at issue. The ALJ made findings of fact and conclusions of law in a prior decision dated August 15, 2003, which was affirmed by this Court in a Memorandum Opinion, Judgment, and Order dated October 20, 2004.  Walters v. Barnhart, London Civil Action No. 03-576-GWU (E.D. Ky.). The ALJ did not reopen the prior application, and this decision is final. As the ALJ noted, her findings in the prior decision were controlling in subsequent, unadjudicated periods, without a showing of new and material evidence or "changed circumstances," citing Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997).  Moreover, there is a relatively narrow period at issue, which runs only from August 16, 2003, the date after the prior, final decision, to the DLI of December 31, 2003.  (Tr. 79).

The ALJ found that the evidence supported a departure from the prior residual functional capacity finding, which limited Mr. Walters to: (1) lifting 10 pounds occasionally and five pounds frequently with the same weight limits applicable to pushing or pulling with the upper extremities; (2) sitting, standing, or walking no more

than 30 to 60 minutes at a time; (3) never climbing or crawling; (4) occasionally crouching or kneeling; (5) occasional reaching overhead; and (6) a need to avoid exposure to heights, moving machinery, humidity, vibration, and rainy or stormy weather. Walters, slip op. at 6.

No evidence from the narrow time frame of August 16 to December 31, 2003 shows that the plaintiff's physical capacities improved from the "sedentary" to the "light" level found by the ALJ.

The previous restrictions were based on a May 13, 2002 functional capacity assessment by Dr. M. Mazloomdoost, a pain management specialist and a treating source.  (Tr. 243-5). These restrictions were supported by a December, 2001 MRI of the lumbar spine which showed diffuse bulging and "heavy degenerative changes" at L4-L5 and L5-S1, as well as the cervical MRI of the same date showing degenerative changes, and foraminal stenosis at C3-4.  (Tr. 136-7).  Dr. William Brooks, a neurologist, reviewed objective evidence and conducted a physical examination showing marked curtailment of range of motion, a positive Phalen's test, and swelling in both knees.  (Tr. 141).  He diagnosed advanced degenerative osteoarthritis which would not lend itself to surgical intervention, and referred his patient to Dr. Mazloomdoost.  (Tr. 140). Dr. Mazloomdoost continued to treat Mr. Walters before, during, and after the relevant period.  At an office visit on August 14, 2003, one day before the end of the previously adjudicated period, Dr. Mazloomdoost noted an increase in pain symptoms, tenderness and spasm in the

left trapezius area, sacroiliac joints, gluteal muscles, and acromial joint.  (Tr. 145).

He described his patient as being in "severe pain."  (Id.). On October 9, 2003, it was

noted that Dr. Delapena, apparently the plaintiff's family physician, had given him a

Toradal injection for hip and knee pain, and Dr. Mazloomdoost recommended

epidural injections.  (Tr. 144).  However, the plaintiff was unable to afford the

injections. (Tr. 248).  Dr. Mazloomdoost also wrote a note dated September 5, 2003

asking for Mr. Walters to be excused from jury duty, citing "rather severe low back

pain," and indicating that sitting more than two to three hours would increase this

pain.  (Tr. 250).

    Not only did the treating source fail to indicate any improvement, state agency

reviewing physicians opined that the restrictions from the prior period would still

apply (Tr. 173-9,182-8), although they did not have the opportunity to address the

new evidence from Dr. Mazloomdoost suggesting a limitation on sitting to no more

than two to three hours.

    Only by referring to a consultative examination conducted by Dr. John R.

Johnson on October 13, 2005, more than a year and a half after the DLI, could the

ALJ support an increase in residual functional capacity.  (Tr. 18).  In addition to

conducting a physical examination, Dr. Johnson did review at least some, albeit

incomplete, records from Dr. Mazloomdoost, which did not include anything before

September, 2003. (Tr. 299, 302).  However, his report does not provide a basis for

the ALJ's hypothetical factors because Dr. Johnson did not specifically, or even

Walters

inferentially, relate his findings to the relevant period, and, in any case, Dr. Johnson restricted Mr. Walters to sitting, standing, and walking no more than four hours each in an eight-hour day and "never" bending and squatting, factors not included in the hypothetical question.  (Tr. 301).

A remand clearly will be required due to the physical factors.  Additionally, a brief discussion of the mental issues is also in order.

The August 15, 2003 ALJ decision did not include any limitations due to mental factors.  There were two consultative mental status evaluations during the relevant period, conducted by psychologists Reba Moore on October 21, 2003 and James Leisenring on December 9, 2003.  (Tr. 165-71, 238-41). The restrictions given in the current administrative decision, however, are consistent with the conclusions of Dr. Kenneth Starkey's report of September 29, 2005, well after the DLI. (Tr. 295-6).

Dr. Starkey had Mr. Leisenring's report available for review, although he did not comment specifically on it, despite the fact that both sources performed IQ and achievement testing, and Dr. Starkey raised an issue of "questionable motivation" on the achievement testing. (Tr. 286, 291-2). Dr. Starkey diagnosed a pain disorder, alcohol dependence in partial remission "per claimant's report," opioid abuse, and nicotine dependence.  (Tr. 293).[1] Examining Mr. Walters in 2003, Mr. Leisenring

---

[1]Under the provisions of Public Law 104-121, drug and alcohol abuse cannot be a basis for a finding of disability.

11

Walters

found a "significantly compromised" ability to respond appropriately to supervision,
co-workers, and work pressures in a work setting based on a diagnosis of a
dysthymic disorder, an anxiety disorder, and low average intelligence.  (Tr. 240-1).
His restrictions were not based on any substance abuse issues.  Reba Moore also
diagnosed a mood disorder with major depressive-like features, an anxiety disorder,
and borderline intellectual functioning, and described Mr. Walters' ability to tolerate
frustration as "low" and his ability to deal with pressure "very poor."  (Tr. 170-1).  She
also indicated that he would have a "significantly compromised" ability to deal with
the pressures of day-to-day employment and sustain persistence and pace, but this
was said to be partly due to "physical complaints," which, as the ALJ correctly noted,
was a factor outside the psychologist's area of expertise. (Tr. 170). Even assuming
that the actual psychological restrictions of Moore can be discounted, however, the
hypothetical question does not adequately reflect her uncontradicted finding based
on achievement testing that Mr. Walters has a fourth-grade arithmetic ability (Tr.
168), or the significant compromise in the plaintiff's ability to respond appropriately
to supervision and co-workers (without consideration of substance abuse) found by
Leisenring.[2] The state agency psychologists who reviewed the record apparently did

_____

[2]As previously noted, Dr. Starkey also conducted achievement testing, and
although he did not translate the results into grade equivalents, Mr. Walters' standard
score of 67 on Starkey's arithmetic testing was even lower than the standard score of 71
on Moore's testing, which she described as equivalent to the fourth grade.  (Tr. 168,
291).

12

Walters

not even see Mr. Leisenring's report.  (Tr. 190-6).  On remand, the ALJ should consider in more detail the restrictions applicable to the relevant period, including the results of achievement  testing.

The decision will be remanded for further consideration.

This the 4th  day of April, 2007.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**